Case 4:24-cv-03785   Document 1-1   Filed on 10/04/24 in TXSD   Page 1 of 11

7/5/2024 12:15 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 89512653
By: Wanda Chambers
Filed: 7/5/2024 12:15 PM

**2024-42700 / Court: 189**

Cause No. _____

| | |
|---|---|
| **4AM Storage & Recovery, Inc.,** | In the District Court of |
| Plaintiff, | |
| v. | Harris County, Texas |
| **Rush Truck Centers of Texas, L.P., Rush Enterprises, Inc., and AmGUARD Insurance Company,** | |
| Defendants. | _____ Judicial District |

### Plaintiff's Original Petition

Plaintiff 4AM Storage & Recovery, Inc. ("4AM" or "Plaintiff") files this Original Petition and would show the Court as follows:

### Jurisdiction and Venue

1. 4AM intends to conduct discovery under Level 3 of Texas Rule of Civil Procedure 190.

2. 4AM seeks monetary relief over $250,000 but not more than $1,000,000, excluding attorneys' fees, pre- and post-judgment interest, and costs. 4AM's damages are within the jurisdictional limits of the Court.

3. Venue is proper in Dallas County, Texas because it is (1) the county in which all or a substantial part of the events or omissions giving rise to the claim occurred. Tex. Civ. Prac. & Rem. Code § 15.002(a)(1).

### Parties

4. Plaintiff 4AM is a Texas corporation with its principal place of business at 22139 Leirop Dr., Richmond, Fort Bend County, Texas.

# EXHIBIT A

5.     Defendant Rush Truck Centers of Texas, L.P.[1] is a Texas limited partnership who can be served by and through its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company at 211 E. 7th Street, Suite 620, Austin, Texas 78701, or wherever it may be found.

6.     Defendant Rush Enterprises, Inc. is a Texas corporation who can be served by and through its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company at 211 E. 7th Street, Suite 620, Austin, Texas 78701, or wherever it may be found.

7.     Defendants Rush Truck Centers of Texas, L.P. and Rush Enterprises, Inc. will hereinafter be referred to collectively as "Rush."

8.     Defendant AmGUARD Insurance Company ("AmGUARD") is a Pennsylvania insurance company who can be served by and through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136, or wherever it may be found.

**Background**

9.     4AM is in the business of towing and automotive storage. Among other, smaller wreckers, 4AM owns a 2016 Peterbilt 389 (the "Peterbilt") which it uses as a heavy wrecker. Unlike regular tow trucks which are seen frequently, the Peterbilt is a rotator wrecker, which is a heavy duty wrecker that has a recovery boom that can be rotated to winch or lift to the side of the wrecker rather than being fixed to the back. A rotator wrecker is more similar to a light mobile crane than a traditional wrecker. As a heavy-duty rotator wrecker, the Peterbilt was and is used for heavy jobs such as semi-trucks or buses. Not only does it have the towing capacity for such heavy vehicles, the rotator can also be used to right heavy vehicles that are on their side or upside down.

---

[1] Rush has also been referred to as Rush Truck Center – Irving.

2

**EXHIBIT A**

Wreckers like the Peterbilt are not in abundance. This, combined with its towing capacity and rotator, means the Peterbilt brings in significant revenue for 4AM.

10. In July 2022, the Peterbilt was involved in an accident which required it to receive extensive repairs. AmGUARD, 4AM's insurance carrier, accepted liability for the repairs and agreed to pay for same.

11. 4AM determined that the most prudent course of action was to have the Peterbilt repaired by a Peterbilt dealer. To that end, 4AM selected Rush to make the repairs. In early September 2022, Rush contacted 4AM to inform 4AM that Rush had space at its facility for the Peterbilt allowing it to start the necessary repairs. 4AM had the Peterbilt towed to Rush's facility.

12. After receiving no updates about the Peterbilt from Rush, in October 2022, 4AM visited Rush's facility. 4AM noted that no work had been done on the Peterbilt. Rush assured 4AM that it did not need to worry because Rush would get to the Peterbilt soon. About a week thereafter, Rush represented to 4AM that the Peterbilt's repairs would be completed by the end of 2022.

13. 4AM visited Rush's facility again in November 2022 to check the progress of the repairs. No repairs had been made.

14. Again, having received no updates, in early December 2022, 4AM contacted Rush to inquire about the status of repairs. 4AM was told that the repairs still had not begun but they would be started the week of December 12, 2022. The repairs did not begin that week.

15. Throughout 2023, Rush repeatedly represented to 4AM that the repairs to the Peterbilt were underway and/or were nearly complete. However, 4AM later learned that in 2023, Rush continued to seek approval from 4AM's insurance carrier to purchase parts for the repairs, requests that should have been made in 2022 when the Peterbilt first arrived at Rush's facility.

3

**EXHIBIT A**

16. During 2023, 4AM visited the Rush facility on numerous occasions only to find the Peterbilt sitting out in the lot, not in a bay where it could be repaired.

17. As 4AM continued to lose revenue while the Peterbilt sat at Rush's facility, the months turned into a year. Finally, after fourteen (14) months, in November 2023, Rush informed 4AM that the Peterbilt had been repaired and 4AM could retrieve it.

18. Upon learning that Rush had completed the repairs on the Peterbilt, 4AM promptly went to Rush's facility to take possession of the Peterbilt. Unfortunately, despite having excessive time to make sure its job was done correctly, Rush made what can only be called a "rookie mistake." Rush failed to fill the transmission with transmission fluid. Approximately twenty (20) miles from the Rush facility, the Peterbilt's transmission failed. The transmission then needed to be rebuilt, resulting in continued loss of use and lost revenues for 4AM, as well as out-of-pocket expenses to rebuild the transmission.

19. But the saga doesn't end there. In January 2024, the Peterbilt began experiencing electrical issues. Rush had repaired the electrical system during the course of its other repairs. 4AM later learned that Rush was supposed to transfer the Peterbilt to another service provider, EdgeTec, to repair the electrical on the Peterbilt but did not.

20. Once the electrical issues started in January 2024, 4AM took the Peterbilt to EdgeTec. 4AM was informed by EdgeTec that Rush did not properly repair the electrical system which was the cause of the issues. 4AM had the electrical system repaired by EdgeTec. Later, there were additional issues with the electrical caused by Rush's shoddy repairs, and 4AM once again took the Peterbilt to EdgeTec for repairs in May 2024. These repairs were also necessary due to the shoddy repairs of the electrical system by Rush.

4

**EXHIBIT A**

21. Beginning in mid-May, the Peterbilt underwent repairs at EdgeTec for nearly six (6) weeks, once again causing 4AM to lose the use of the Peterbilt along with coinciding revenues and resulting in additional expenses to 4AM to make the repairs.

22. While 4AM alleges that its damages were caused solely by the acts or omissions of Rush, 4AM also asserts conditional claims against AmGUARD. Particularly, the claims against AmGUARD are being conditionally asserted in the event it is ultimately found that any of 4AM's damages were not solely caused by the acts and/or omissions of Rush.

23. 4AM now bring suit against Rush seeking to recover the damages it has suffered as a result of Rush's acts and/or omissions relating to the repair of the Peterbilt. 4AM also conditionally brings suit against AmGUARD to recover its damages to the extent it is determined that 4AM's damages were not solely caused by the acts and/or omissions of Rush.

## Causes of Action

I. **Breach of Contract – Rush**

24. 4AM and Rush entered into a valid, enforceable agreement whereby Rush would, within a reasonable time, repair the Peterbilt in exchange for payment from 4AM (through AmGUARD). 4AM fully performed its obligations under the parties' agreement by paying (or causing to be paid) all sums due and owing to Rush.

25. Rush failed to perform its obligations under the parties' agreement, because it did not repair the Peterbilt within a reasonable time. This failure to comply with the parties' agreement has caused damages to 4AM within the jurisdictional limits of the Court for, including but not limited to, lost profits.

II. **Violations of the Deceptive Trade Practices Act ("DTPA") – Rush**

26. 4AM is a consumer because it is a corporation that sought or acquired, by purchase, goods and services from Rush.

5

**EXHIBIT A**

27. Rush is a limited partnership that can be sued under the DTPA.

28. Rush violated the DTPA when Rush engaged in false, misleading, or deceptive acts or practices that 4AM relied on to 4AM's detriment. Specifically, Rush:

   a. Represented that good or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities they do not have;

   b. Represented that goods or services are of a particular standard, quality, or grade;

   c. Falsely represented that work or services had been performed on or parts replaced in goods; and/or

   d. Failed to disclose information about goods or services that was known at the time of the transaction and the failure to disclose was intended to induce 4AM to enter into a transaction that it would not otherwise have entered into if the information had been disclosed.

29. Rush further violated the DTPA by breaching the following warranties:

   a. The express warranty for services;[2] and

   b. The implied warranty for services – repair and modification.[3]

30. 4AM gave Rush notice as required by Texas Business & Commerce Code section 17.505(a).

31. Rush's wrongful conduct was a producing cause of 4AM's injury, which resulted in damages for, but not limited to, lost profits and out of pocket expenses for repairs to the Peterbilt which were made necessary by Rush's acts and/or omissions.

32. 4AM seeks unliquidated damages within the jurisdictional limits of the Court.

33. Further, Rush acted knowingly, which entitles 4AM to recover mental anguish damages and treble economic damages.

---

[2] *See, e.g., Southwestern Bell Tel. Co. v. FDP Corp.*, 811 S.W.2d 572, 576-77 & n. 3 (Tex. 1991).

[3] *See, e.g., Parkway Co. v. Woodruff*, 901 S.W.2d 434, 438-39 & n. 3 (Tex. 1995).

6

**EXHIBIT A**

34.     4AM is also entitled to recover its reasonable and necessary attorneys' fees for prosecuting this suit under Texas Business & Commerce Code section 17.50(b)(1).

### III.    Breach of Warranty – Rush

#### A.    Express Warranty for Services

35.     Rush sold repair services to 4AM for the repair of the Peterbilt. Rush represented to 4AM the characteristics of that service by representing that the services would be performed within a reasonable time and made such representation as an affirmative fact. Rush made the representation by describing the service. That is, Rush represented that it would repair the Peterbilt by the end of 2022 and continually represented to 4AM thereafter that it was working on the repairs and the Peterbilt would be ready soon. The representation that the services would be performed within a reasonable time was part of the basis of the bargain. Rush's services did not comply with Rush's representations, which was a breach of Rush's express warranty which caused damages to 4AM within the jurisdictional limits of the Court.

#### B.    Implied Warranty of Good & Workmanlike Services – Repair & Modification

36.     Rush sold repair services to 4AM for repair of the Peterbilt. Rush did not perform the services in a good and workmanlike manner, which was a breach of the implied warranty of good and workmanlike repair. Specifically, Rush did not complete the repairs within a reasonable time. Further, Rush failed to put transmission fluid in the transmission prior to turning the Peterbilt over to 4AM, causing transmission failure. Additionally, Rush did not properly repair the electrical

7

**EXHIBIT A**

system in the Peterbilt. Rush's breach of warranty directly and proximately caused damages to 4AM within the jurisdictional limits of the Court.

### IV. Fraud – Rush

37. Rush continually represented to 4AM that it was working on the repairs to the Peterbilt and that the Peterbilt would be finished soon. Such statements were false. Rush knew that it was not working on the Peterbilt and that the repairs would not be finished in the time specified or any time near the time specified.

38. Rush made the representations knowing they were false or with reckless disregard for their truth. 4AM relied on Rush's representations by allowing the Peterbilt to remain with Rush rather than locating a different dealer to make the repairs in a reasonable time.

39. Rush's false representations directly and proximately caused injury to 4AM, which resulted in damages within the jurisdictional limits of the Court.

### V. Negligent Misrepresentation – Rush

40. Rush committed negligent misrepresentation. Rush continually represented to 4AM that it was working on the repairs to the Peterbilt and that the Peterbilt would be finished soon, when neither was the case

41. Rush's negligent misrepresentation directly and proximately caused injury to 4AM within the jurisdictional limits of the Court.

### VI. Negligence – Rush

42. Rush owed a legal duty to 4AM to perform the repairs to the Peterbilt and all services connected therewith as a reasonably prudent person would under the same or similar circumstances.

8

**EXHIBIT A**

43. Rush breached its duty by failing to fill the transmission with transmission fluid prior to returning the Peterbilt to 4AM. Rush further breached its duty by attempting to repair the electrical issues when a different business was supposed to do so, causing significant issues with the electrical system, causing 4AM to lose additional revenue because the Peterbilt was again out of service.

44. Rush's breaches of its duties have proximately caused injury to 4AM consisting of damages within the jurisdictional limits of the Court.

### VII.   Late Payment of Claim – AmGUARD

45. As stated above and conditionally alleged herein, the acts and/or omissions of AmGUARD conditionally give rise to the following cause of action:

46. 4AM was an insured under a contract for automobile insurance issued by AmGUARD. AmGUARD is a corporation.

47. 4AM suffered a loss covered by the policy and gave proper notice to AmGUARD of 4AM's claim on or shortly after July 6, 2022.

48. AmGUARD is liable for the claim and had a duty to pay the claim in a timely manner.

49. AmGUARD breached its duty by not timely paying the claim after accepting it. Specifically, upon information and belief, AmGUARD failed to timely approve repairs and issue payment to Rush to allow Rush to make at least some of the necessary repairs in a timely manner.

50. AmGUARD's breach of its duty caused injury to 4AM resulting in damages within the jurisdictional limits of the Court.

51. Additionally, under Texas Insurance Code chapter 542A, 4AM can recover statutory damages of 18% of the amount of the claim.

**EXHIBIT A**

52. **Attorney's Fees & Costs:** 4AM is entitled to recover its attorneys' fees and costs under Texas Civil Practice & Remedies Code chapter 38, Texas Business & Commerce Code section 17.50(b)(1), and Texas Insurance Code chapter 542A.

### Conditions Precedent

53. All conditions precedent to 4AM's claims for relief have been performed, have occurred, or have been waived.

### Rule 193.7 Notice

54. Pursuant to Texas Rule of Civil Procedure 193.7, 4AM hereby gives notice that it intends to use all documents produced by any party in all pre-trial hearings and at trial.

### Jury Demand

55. 4AM hereby demands that all causes of action herein alleged by tried to a jury and tenders the appropriate jury fee with the filing of this petition.

### Prayer

56. 4AM prays that the Rush and AmGUARD be cited to appear and that the Court enter judgment as set forth above for:

1. Actual damages;
2. Statutory damages;
3. Attorneys' fees;
4. Pre- and post-judgment interest; and
5. Costs.

4AM also prays for any further relief to which it may be entitled at law or in equity.

# EXHIBIT A

Respectfully submitted,

**HAWASH CICACK & GASTON LLP**

*/s/ Michael A. Hawash*
Michael A. Hawash
Texas Bar No. 00792061
mhawash@hcgllp.com
Kristin K. Reis
Texas Bar No. 24060478
kreis@hcgllp.com
3401 Allen Parkway, Suite 200
Houston, Texas 77019
713-658-9015 (phone & fax)

*Attorneys for Plaintiff*
*4AM Storage & Recovery, Inc.*

11

# EXHIBIT A